IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **TOGAIL TECHNOLOGIES LTD.,**<br>*Plaintiff*<br><br>-vs-<br><br>**APPLE INC.,**<br>*Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | W-22-CV-00326-ADA |

## ORDER DENYING DEFENDANT'S MOTION TO TRANSFER

Before the Court is Defendant Apple Inc.'s ("Apple's") Motion to Transfer Venue to the Northern District of California Under 28 U.S.C. § 1404(a). ECF No. 34. Plaintiff Togail Technologies, Ltd. ("Togail") opposes the motion, agrees that California is more convenient, and requests a transfer to the Southern District of California instead. ECF No. 48. Apple filed a reply to further support its motion. ECF No. 51. After carefully considering the parties' briefs and the applicable law, the Court **DENIES** Apple's motion to transfer venue to the Northern District of California, and instead transfers to the Southern District of California.

### I. FACTUAL BACKGROUND

In its complaint, Togail claims Apple infringed on U.S. Patent Nos. 10,743,238 ("'238 patent"), 10,791,502 ("'502 patent"), 10,972,972 ("'972 patent"), and 11,115,165 ("'165 patent") (collectively, the "Togail patents"), which relate to wireless electronic devices. ECF No. 1 at ¶ 2-5. Togail, the owner of the Togail patents, is a technology licensing company with its principal place of business in Ireland. *Id.* ¶ 1. Apple is a corporation organized under the laws of the state of California. *Id.* ¶ 7. Apple's headquarters are located in Northern California. ECF No. 34 at 7. Apple admits that it has offices in SDCA. ECF No. 51 at 3. According to Togail, Apple sells

1

wireless communication devices such as mobile phones and tablets that infringe on the Togail patents. ECF No. 1 at ¶ 8. Both parties agree that the technology at issue relates to 5G implementation. ECF No. 34 at 1; ECF No. 48 at 1; *see generally* ECF No. 34-A (preliminary infringement contentions). Togail accuses the Apple's products including wireless communications devices including, but not limited to, the Apple iPhone 12, Apple iPhone 12 mini, Apple iPhone 12 Pro, Apple iPhone 12 Pro Max, Apple iPhone SE (3rd generation), Apple iPhone 13, Apple iPhone 13 mini, Apple iPhone 13 Pro, Apple iPhone 13 Pro Max, Apple iPad mini (6th generation), Apple iPad Air (5th generation), Apple iPad Pro 11-in. (3rd generation), and Apple iPad Pro 12.9-in (5th generation) of infringing the Togail patents. *Id.* ¶ 13, 23, 33, 43. The Court will refer to these products collectively as the "accused products."

After answering Togail's complaint, Apple filed this motion to transfer. ECF No. 34. Apple does not argue that the Western District of Texas ("WDTX") is an improper venue for this case. Instead, it argues that the Northern District of California ("NDCA") is a more convenient forum, pointing to the location of potential witnesses, the location of relevant records, the compulsory process, and practical problems in NDCA. *Id*. at 6−12. Togail contends that the case should transfer to the SDCA, pointing to, among other factors, Qualcomm third-party witnesses and evidence in SDCA. ECF No. 48 at 1.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration

2

of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is different from the "clear and convincing" standard, the moving party must still show more than

3

a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

It is proper for the Court to transfer a case to a venue that is different than the venue sought by the initial movant. *See Enhanced Sec. Research LLC v. Juniper Networks, Inc.*, No. 2:09-cv-158-TJW, Dkt. No. 49 (E.D. Tex. Oct. 23, 2009) (Transferring a case initially filed in EDTX to Plaintiff's choice of Delaware when Defendant requested transfer to NDCA); *Digital-Vending Servs. Int'l v. Univ. of Phoenix, Inc.*, No. 2:08-cv-91-TJW, Dkt. No. 86 (E.D. Tex. Sept. 30, 2009) (Transferring a case initially filed in EDTX to Plaintiff's choice of the Eastern District of Virginia when Defendant requested transfer to the District of Columbia).

### III. DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in either destination venue—the NDCA or the SDCA. Neither party disputes that venue could be proper in either destination. Apple operates a regular and established place of business in Cupertino and the greater Santa Clara Valley areas in NDCA. ECF No. 34 at 2, 6. Apple also operates a regular and established place of business in San Diego, California within the SDCA. ECF No. 48 at 3. This Court therefore finds that venue would have been proper in the either the SDCA or NDCA had the suit originally been filed in either place. Thus, because neither party disputes that SDCA and NDCA are clearly more convenient than WDTX, the Court now analyzes the private and public interest factors to determine if the NDCA is a more convenient forum than the SDCA.

4

### A. The Private Interest Factors

#### i. The Cost of Attendance and Convenience for Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at * 4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* However, the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342. When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

According to Apple, the majority of Apple's potential witnesses reside in the NDCA. ECF No. 34 at 6-7. Apple admits that it also has relevant witnesses in San Diego within the SDCA, and Togail alleges that there are multiple relevant Apple engineers in the SDCA. *Id.* at 7; ECF No. 34 at 6-7. Apple further suggests that it has potentially relevant witnesses in Boulder, CO, and Washington D.C. No. 34 at 6-7. Apple also alleges potentially relevant witnesses for both parties

5

reside outside the United States. ECF No. 34 at 6-7; ECF No. 34-1 ¶ 4. Apple claims (and Togail agrees) that there are third-party witnesses at Qualcomm (who may be willing or not) ███████ ███████████████████████████████. *Id.* at 8; ECF No. 48 at 3-5. Each group of witnesses will be discussed below.

1.  Apple's Employees in the NDCA

According to Apple, most of the engineers knowledgeable of the accused products are located in Apple's facilities in Cupertino, CA, and San Diego, CA. ECF No. 34 at 6-7. Apple also states that ████ employees for the marketing team for the accused products work out of Cupertino. ECF No. 34-1 at ¶ 4. Apple has identified the following potential willing witnesses in its Cupertino facility: (1) Prashant H. Vashi, (2) Anjali Jotwani, and (3) Brian Ankenbrandt. ECF No. 34 at 1. ████████████████████████████████████████████████████████████████████ ███████████████████████ ECF No. 34-3 at ¶¶ 5-6; ECF No. 25-1 at 17. ████████████████ ██████████████████████████████████████████████████████████████. ECF No. 34-1 at ¶ 3. ████████████████████████████████████████████. ECF No. 34-2 at ¶ 3. Apple argues that the NDCA is a far more convenient forum for these witnesses than the WDTX. ECF No. 34 at 6-8. In response, Togail does not doubt the relevance of the declarant witnesses, but in response offers multiple Apple and Qualcomm witnesses located in San Diego, where the SDCA would be more convenient. ECF No. 48 at 5-7.

The Court agrees with Apple (and Togail does not dispute) that the NDCA would be a more convenient forum than the SDCA for Apple's █ potential witnesses in Cupertino, California. The relevant consideration here is "the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an

extended period of time." *In re Google, LLC*, 2021 WL 4427899, at * 4. Thus, the Court finds the presence of these witnesses in NDCA weighs in favor of transfer.

    2. <u>Apple's Employees in SDCA</u>

Apple admits that some potentially relevant employees work in its offices in SDCA but does not suggest that they would testify. ECF No. 34 at 1, 6-7; ECF No. 34-3 at ¶ 5. Togail argues that Apple has multiple relevant willing witnesses that it argues "possess relevant knowledge and could provide testimony at trial." ECF No. 48 at 5-6. Togail argues that Apple only identifies three potentially relevant witnesses, and in turn, identifies 8 Apple engineers, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ as all working on relevant Qualcomm 5G technology. *Id.* Togail very specifically describes why the 8 Apple engineers might be relevant, that all the identified employees have self-proclaimed experience with 5G cellular technology at both Apple and Qualcomm. *Id.* at 6. In addition, Apple provided the employees in response to a Request for Production ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.*

In response, Apple first argues that it provided three *declarations*, not witnesses, and should therefore consider all employees supervised by declarants. ECF No. 51 at 3. The teams Mr. Vashi and Ms. Jotwani are relevant as they ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Mr. Ankenbrandt declares that he is knowledgeable about ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇". ECF No. 34-2 at ¶ 3. However, the patent licensing team members should not be considered because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

7

██████████████████████████████████████████████████████

██████████████████████████████████.

Second, Apple incorrectly asserts that the individuals identified by Togail were only considered relevant based on working for Qualcomm. ECF No. 51 at 4. Rather, Togail identified these individuals based on them working on the cellular 5G technology accused in the case. It is clear from the job descriptions provided by Apple, and the employees own descriptions of their work on 5G technologies from their LinkedIn profiles, that they have potentially relevant information. ECF No. 48 at 6-7

Third, Apple argues in its response that Togail is "cherry-picking" the eight individuals in San Diego while ignoring a greater number in NDCA and therefore Togail is artificially inflating its argument. ECF No. 51 at 4. This is unavailing because, as Apple admits just a sentence earlier, it believes that none of the other employees provided in the spreadsheet which identified the 8 individuals are relevant, and Apple does no analysis to walk back its disclaimer as to why the other employees identified on the list in NDCA might be relevant. ECF No. 51 at 4.

The Court finds that the Apple employees identified by Qualcomm have relevant information. Therefore, the Court finds that the presence of 8 relevant Apple employees in the SDCA weighs against transfer.

### 3. Apple and Togail's Willing Witnesses Outside the United States

Apple admits that it has multiple product marketing employees who work on marketing for the accused product. ECF No. 34-1 at ¶ 4. In addition, Togail is headquartered in Dublin, Ireland, and any employees based there would have to travel overseas. ECF No. 34 at 7-8. To the extent that any relevant Apple or Togail employee is based outside the United States, neither the NDCA nor the SDCA is a convenient forum. Both parties' international employees would have to travel

8

a significant distance to either venue and would incur travel, lodging, and related costs in both locations. Even if one venue may be slightly more convenient than the other for either parties international employees, this difference should not weigh heavily in the analysis of this factor. *In re Apple*, 979 F.3d at 1342. The Court finds that the presence of any relevant Apple or Togail employees outside the United States does not affect the outcome of this factor.

### 4. Third-Party Willing Witnesses from Qualcomm

Both parties agree that there are multiple third-party relevant Qualcomm witnesses that would potentially be relevant. Apple and Togail both identify third party Qualcomm employees ▮▮▮▮▮▮▮▮▮▮ as potentially relevant and subject to subpoena power in California. ECF No. 34 at 11-12; ECF No. 48 at 8-10. In addition, both parties recognize that up to 10 prior art patents identified by Apple have inventors that reside in San Diego and would be subject to compulsory process in California. ECF No. 48 at 8-9; ECF No. 34 at 12.

The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018). Because both parties have failed to show that relevant witnesses from Qualcomm are willing to testify at trial, these potential witnesses are presumed to be unwilling. They will be considered under the compulsory process factor below. The potential witnesses from Qualcomm do not impact the outcome of the willing witness factor.

### 5. Conclusion

The Court finds this factor is very slightly in favor of transfer to the NDCA based on 6 more relevant employees in NDCA than SDCA. Apple has identified 16 relevant Apple willing witnesses in the NDCA and Togail has identified 10 in the SDCA. The Court finds that

9

Qualcomm's third-party employees, Togail's international willing witnesses, and Apple's international employees do not affect the outcome of this factor.

### ii. The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345).

According to Apple, the NDCA is a more convenient forum because its sources of proof are more easily accessible there. ECF No. 34 at 9-10. But Apple claims that relevant documentation is located "in and around Apple's California facilities". ECF No. 34 at 9. In addition, Apple admits that Apple's electronically stored information is on computers in the NDCA and shared repositories accessible by custodians who "live and work in the state of California" or on a need-to-know basis. *Id.* Apple argues that the majority of custodians reside and work in NDCA. *Id.* Lastly, Apple admits that documents from Qualcomm employees and documents are likely in SDCA because of Qualcomm's San Diego headquarters. *Id.* at 10.

In response, Togail argues that this factor supports transfer to SDCA because of Apple's reliance on Qualcomm products, and the fact that source code, physical evidence, and technical documents are almost certain to be found in SDCA. ECF No. 48 at 3-4. Apple seems to agree, attempting to shift responsibility for any infringement of 5G standards to Qualcomm: ███

10

███████████████████████████████████████████████████████████████ *Id.* Apple tries to distance itself further, stating that ███████████████████████████

███████████████████████████████████████████████████████████████

*Id.* Togail further argues that Apple fails to substantiate its evidentiary claims because all the Apple declarations have cursory allegations to where documents are located and Apple admitted that the declarants ████████████████████████████████████████████. *Id.* at 5.

      The Court finds that there are likely Apple documents related to the hardware of the accused products, marketing, and licensing are both stored/accessible in Apple's Cupertino facility. Because the hardware of the accused product was likely developed, at least in part, in the Cupertino facility, the Court concludes that there are likely engineering design plans and other technical documents there despite Apple's failure to identify any specific documents. Still, the Court also finds that the accused functionality was integrated in-part in San Diego (by at least the Apple employees identified by Togail), so there are likely technical documents and custodians there. Further, although the Akenbrandt Declaration alleges that no employees in *Texas* have access to documents in shared locations, but is unclear regarding employees in other parts of California. There are therefore likely relevant Apple documents in both the NDCA and the SDCA.

      The Court further finds that there are also many relevant Qualcomm documents in the SDCA. At the very least, source code, technical documentation, and integration documentation are all housed in the SDCA. Apple has even admitted that it believes ████████████████████

███████████████████████████████████████████████████████████████

████████████ which weighs heavily in favor of relevant documents being located in SDCA. ECF No. 48 at 3-4. Neither party has alleged that Qualcomm documents are in NDCA.

11

Because of Apple's own admitted outsized reliance on Qualcomm's technical documentation located in SDCA, and the fact that Apple itself has documents located in both the NDCA and SDCA, the Court finds that this factor weighs slightly in favor of transfer to the SDCA.

### *iii.The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018).

As discussed in both Sections III(A)(i) and III(A)(ii), Apple and Togail both identify third party Qualcomm employees who █████████████████████ based in San Diego as highly relevant and subject to subpoena power in California. ECF No. 34 at 11-12; ECF No. 48 at 8-10. In addition, both parties recognize that up to 10 prior art patents identified by Apple have inventors that reside in San Diego and would be subject to compulsory process there. ECF No. 48 at 8-9; ECF No. 34 at 12.

As discussed above, the Court considers these potential witnesses under the compulsory witness factor because Apple has failed to show that these third-party witnesses are willing to

12

testify at trial. *See In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018) (explaining that third-party witnesses are presumed unwilling). The Court concludes that the compulsory process factor weighs slightly in favor of transfer. Although technically either the SDCA or the NDCA has subpoena power over the Qualcomm witnesses, only the Court in SDCA would be guaranteed to have the ability to subpoena a witness at trial under Fed. R. Civ. P. 45(c)(1)(A). Nor has Apple contested the outsized relevance of the third-party Qualcomm engineering and prior art witnesses identified by Togail. Thus, this factor weighs slightly in favor of transfer to SDCA.

> *iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010). But the Federal Circuit has suggested that it is an error to determine that this factor strongly disfavors transfer based primarily on co-pending litigation with pending motions to transfer. *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017).

Apple argues that this factor is favors transfer because this case is in its early stages and it would not waste judicial resources to transfer the case to the NDCA. ECF No. 34 at 12. In response,

13

Togail summarily states that the factor is neutral with no analysis. ECF No. 48 at 11. But, although Togail provides no analysis for why the factor is neutral, and there are no co-pending cases in either the NDCA or SDCA, therefore transferring this case to either district would lead to the same expenditure of judicial resources. The Court finds that this factor is neutral.

**B. The Public Interest Factors**

*i. Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

In its initial brief, Apple argues that the weighted time to trial in the NDCA is 31.1 months. ECF No. 34 at 14. In response, Togail argues that patent cases reach trial in NDCA between 695 and 1,204 days. ECF No. 48 at 11. Similarly, Togail argues patent cases reach trial in SDCA between 649 and 1,231 days. *Id.* In its reply, Apple does not dispute Togail's time-to-trial statistics for the SDCA. ECF No. 51 at 5.

The undisputed data available to the Court indicates that the SDCA would reach trial at approximately the same time as the NDCA. Therefore, the Court finds this factor is neutral.

*ii. Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook,*

14

*Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

Apple claims that the NDCA has a local interest in this case because its headquarters is located in the NDCA and the resolution of this case impacts its employees located there. ECF No. 34 at 13. In response, Togail argues that the SDCA has a local interest in this case because the 5G chipsets that the Apple products used are developed by Qualcomm in SDCA. ECF No. 48 at 10. Apple disclaims that it was "involved in the design or development of these [5G] chipsets" and that "the functionalities in the Qualcomm baseband chipsets were designed and developed by Qualcomm". ECF No. 34-3 at ¶ 6. Further, Apple agrees that Qualcomm has potential relevant employees in SDCA and those relevant employees ███████████████. ECF No. 34 at 14.

15

The Court finds that the NDCA likely has a local interest in this suit. Apple operates a facility out of the NDCA and individuals who worked on the accused product are likely located there. However, the Court also finds that the SDCA likely has a local interest in this suit. Qualcomm ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and Apple specifically ▮▮▮▮▮▮▮▮▮▮▮▮. Furthermore, Qualcomm engineers ▮▮▮▮▮ are in SDCA. *See supra* Section III(A)(i).

Because Apple ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the SDCA likely have a slightly stronger local interest in the outcome of this litigation, the Court finds this factor slightly in favor of transfer to the SDCA.

### iii. *Familiarity of the Forum with the Law That will Govern the Case*

Apple and Togail agree that this factor is neutral; both forums are familiar with the law that will govern this case. ECF No. 34 at 14; ECF No. 48 at 11. The Court agrees.

### iv. *Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Apple and Togail agree that this factor is neutral—there are no potential conflicts here. ECF No. ECF No. 34 at 14; ECF No. 48 at 11. The Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, the Court finds that four of the factors are neutral, three slightly favor transfer to SDCA, and one slightly favors transfer to the NDCA. Only one of the factors weigh in favor of transfer to the NDCA, versus three that favor transfer to the SDCA. Although the analysis is not a strict mathematical calculation, the Court finds that on balance, the SDCA is a more convenient forum than the NDCA. The Court's conclusions for each factor are summarized in the following table:

16

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Slightly in favor of SDCA |
| Cost of attendance for willing witnesses | Slightly in favor of NDCA |
| Availability of compulsory process to secure the attendance of witnesses | Slightly in favor of SDCA |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Slightly in favor of SDCA |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

**IT IS THEREFORE ORDERED** that Apple's Motion to Transfer Venue to the Northern District of California is **DENIED** (ECF No. 34) and **ORDERED** that the case is transferred to the Southern District of California.

**SIGNED** this 5th day of April, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

17